Dear Senator Strong:
You have requested an opinion as follows:
 "(a) May two or more counties cooperate with each other to jointly purchase metal culverts, connecting bands and grader blades, not to be used for a facility or service common to such counties, but rather to be used for the individual needs of such counties.
 "(b) May two or more counties solicit bids for their combined purchasing requirements of metal culverts, connecting bands and grader blades and purchase from the lowest and best bidder based upon their combined purchase requirements without a determination of what the lowest and best bid is for their individual purchase requirements?
 "(c) May a county delegate to Missouri Associate [sic] of Councils of Governments ("MACOG") the responsibility for soliciting bids, selecting the lowest and best bidder, and entering into a contract for purchase of metal culverts, connecting bands and grader blades, the purchase of which is governed by R.S.Mo. § 50.660 (1986 Supp.), Rules Governing Contracts."
These questions arise from a cooperative procedure utilized by certain counties for issuing invitations to bid for equipment and supplies to be purchased and used by the counties. The factual description of this procedure has been obtained from your opinion request and from a letter dated March 26, 1986, authored by the executive director of the Missouri Association of Councils of Government (MACOG) which was sent in response to an inquiry from this office.
MACOG has provided a succinct description of the cooperative bidding process as follows:
 "Because of the fact that several of the regional councils or regional planning commission have been successful in working in cooperative ventures for their local units of government and, in turn, saving tax dollars, there was an interest expressed at having our statewide association put together a bid package for metal culverts and roadgrader blades as a means of assisting local government save money.
* * *
 "Basically what has occurred is that the individual regional councils have asked MACOG to put together a package bid, and the bids have come in on a per-region basis on an all or nothing basis for supplying the materials. We sent information out to the individual counties concerning the bidding process, and those that wished to have materials bid filled out a simple form telling us the quantities that they wanted of either the roadgrader blades or culverts, bands, and bolts and that kind of thing. The individual regional councils then compiled a comprehensive listing from the local municipal and county governments that chose to have bidding done this way, and it was sent to our MACOG office which then calculated the statewide needs for various types of grader blades and different sizes of culverts, etc., and issued a bid request. Subsequent to this, the information on the bids has been sent back to the regional councils which have, in turn, provided the information to the local units of government so that they can make a decision as to whether they are going to participate in the program and accept the bids or not."
The regional councils mentioned are those established under § 251.150 et seq., RSMo 1978. MACOG has been incorporated in Missouri as a general not-for-profit corporation. Its articles of incorporation establish its purpose as follows:
 "To promote, advance and assist the regional planning commissions and councils of government in the state of Missouri and all other legal powers permitted General Not for Profit Corporations."
More specifically, its purposes are spelled out in Article II of its by-laws:
 "2.1 The purpose of the corporation shall be to promote the interests of local governments through:
 2.1.1 The identification and evaluation of mutual areawide problems requiring statewide solutions;
 2.1.2 To assist in the development of intergovernmental activities;
 2.1.3 To participate in and encourage local governments to seek solutions to areawide problems through multi-jurisdictional action;
 2.1.3 To undertake other lawful activities pursuant to provisions of these by-laws and permitted by RSMo chapter 355."
According to Article VII of its by-laws, MACOG has a board of directors which is comprised of one elected official designated from each member regional planning commission or council of government. Each member of the board has one vote on all matters. The board also elects from their number for two-year terms a president, vice-president, and combination secretary/treasurer.
You have submitted with your request an Invitation to Bid dated January 12, 1986, which is for "bids to supply corrugated Metal Culverts and Connecting Bands as per the attached specifications in this bid." Attached to the Invitation are specifications listing the individual county, the number of culverts for each county along with the size, gauge, type and drop ship location for each county. The same information is given county by county for the connecting bands. There is also a table giving the total number of each type of culvert and connecting band.
According to the Invitation the bidder must sign and agree to the following:
 "The Bidder hereby agrees to furnish items and/or services, at the prices quoted, pursuant to all requirements and specifications contained in this document, upon either the receipt of an authorized Purchase Order from MACOG or when this document is countersigned by MACOG as a binding Contract. The Bidder further agrees that the language of this document shall govern in the event of a conflict with His or Her Bid."
The Invitation directs that the sealed bids must be received by MACOG by a certain time and date. The General Requirements page included in the Invitation states in relevant part as follows:
 "Billing shall be in the form of a statement accompanied by copies of the delivery receipts for materials. A copy of the delivery receipt shall also be provided to the Agency representative on receipt of the materials. Each governmental entity will be billed separately.
 The bid will be awarded on an all or none basis by region except where indicated.
 The counties/cities reserve the right to reject any or all bids."
A February 7, 1986, Addendum to the bidders states in paragraph 4 as follows:
 "4. While bids are being requested on the regional basis, the delivery and billing point will be with each individual county. The regional planning commission will forward verification of the order from the counties to the vendor."
Your questions concern the authority of the counties to participate in such a competitive bidding process under the authority of Article VI, section 16, Missouri Constitution and the statutes implementing that section, §§ 70.210 et seq.
 "Any municipality or political subdivision of this state may contract and cooperate with other municipalities or political subdivisions thereof, or with other states or their municipalities or political subdivisions, or with the United States, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service, in the manner provided by law." Article VI, section 16, Missouri Constitution
 "Any municipality or political subdivision of this state, as herein defined, may contract and cooperate with any other municipality or political subdivision, or with an elective or appointive official thereof, . . . or with any private person, firm, association or corporation, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service; provided, that the subject and purposes of any such contract or cooperative action made and entered into by such municipality or political subdivision shall be within the scope of the powers of such municipality or political subdivision." § 70.220, RSMo 1978.
 Question (a):
 "(a) May two or more counties cooperate with each other to jointly purchase metal culverts, connecting bands and grader blades, not to be used for a facility or service common to such counties, but rather to be used for the individual needs of such counties."
Two or more counties may cooperate with each other in the manner described in the MACOG bidding process for purchase of equipment or materials to be used for the individual needs of each of the counties. Section 70.220, RSMo 1978, allows such cooperative activity if (1) the county is a political subdivision as defined in § 70.210(2), RSMo 1978; (2) the cooperation is with an entity described in § 70.220, such as another political subdivision or any private corporation; (3) the object of the contract or cooperative agreement is as designated in § 70.220, such as, "for a common service"; and, (4) the subject and purposes of the contract or cooperative activity are within the scope of the powers of the counties involved. Your opinion request focuses on whether requirement (4) is met. On page 7 of your request you state as follows:
 "Because their [the counties'] cooperative activity involved herein is not for the furtherance of a common service or facility, but is rather for the procurement of materials for the individual participating counties, it appears that such a cooperative activity may not be authorized by Missouri law."
The common service here is the provision of the bidding process. Simply because the materials eventually obtained through that process are not used in common by all the counties does not matter. The bidding process itself is the common service. The provision of a competitive bidding process is not only within the scope of the powers of the counties but is required. Section 50.660, RSMo Supp. 1984.
Question (b):
 "(b) May two or more counties solicit bids for their combined purchasing requirements of metal culverts, connecting bands and grader blades and purchase from the lowest and best bidder based upon their combined purchase requirements without a determination of what the lowest and best bid is for their individual purchase requirements?"
If a county enters a cooperative bidding procedure as described above, it need not on its own advertise and request for bids in order to get a comparison between the responses to its request and those to the invitation put out by MACOG. If there is a statutory section separate from § 50.660 allowing a county to engage in competitive bidding in a manner different from § 50.660, the county is allowed the option of choosing either of the two methods provided by the legislation. This issue was resolved in Opinion Letter No. 169 (1974), copy enclosed, when Cole County inquired of this office as to whether a county which has an agreement with the state of Missouri under the State-Local Technical Services Act, § 67.330 through67.390, RSMo, for the purchase of supplies and equipment must advertise for bids for the same materials in the manner spelled out in § 50.760, RSMo (this section contains competitive bid requirements substantially similar to those in § 50.660). This office opined that such an arrangement was legally permissible.
 "Under Section 67.360, it was the intent of the General Assembly to allow centralized procurement of equipment and the like required by such political subdivisions through the state agency. When such political subdivision has entered into such an agreement with the state agency and has complied with the requirements for such purchases, Section 50.760 is not applicable and purchases may be made pursuant to Section 67.360 without bids." Opinion Letter No. 169 (1974), page 2.
The reasoning of that opinion letter can be applied to the instant situation in which counties have formed together with MACOG for the common service of soliciting bids under § 70.220. The benefits of such joint purchasing are well known in this day and age. The policy of the General Assembly is clear in regard to encouraging economies in local government through cooperative action. In a case concerning § 70.220, the Missouri supreme court held:
 "The purpose of the constitutional provision [Article VI, Section 16] is to enable municipalities and political subdivisions to effect economies and facilitate the performance of their selected public functions
although actual consolidation of the governmental agencies is not feasible." [Emphasis added] School District of Kansas City v. Kansas City, 382 S.W.2d 688, 692 (Mo. banc 1962), accord, Cape Motor Lodge, Inc. v. City of Cape Girardeau, No. 67507 (Mo. banc March 25, 1986), Slip Opinion at page 9.
Just as emphatic is the General Assembly's statement of policy in § 67.330, RSMo 1978, of the State-Local Technical Services Act:
 "It is hereby declared the policy of the general assembly of the state of Missouri that all forms of contractual and cooperative services that promote the economy and efficiency of operations of local government should be encouraged. . . ." Section 67.330, RSMo 1978.
The counties participating in the MACOG arrangement have chosen a manner authorized by § 70.220 to fulfill the requirement to have competitive bidding. They do not need to employ a separate and individualized bidding procedure in addition thereto for the items bid through MACOG.
Question (c):
 "(c) May a county delegate to Missouri Associate [sic] of Councils of Governments ("MACOG") the responsibility for soliciting bids, selecting the lowest and best bidder, and entering into a contract for purchase of metal culverts, connecting bands and grader blades, the purchase of which is governed by R.S.Mo. § 50.660 (1986 Supp.), Rules Governing Contracts."
Your question raises the issue of whether certain nondelegable executive functions of the counties have in fact been delegated to MACOG by the cooperative bidding procedures. The facts, however, show that such is not the case. As the previously quoted material from MACOG's March 26, 1986, letter shows, the counties review the bidding process before agreeing to participate. All bids received in response to the Invitation to Bid are then sent to the counties by MACOG. Each county decides on its own whether or not to accept the bids. As its says in the General Requirements section of the Invitation to Bid, "The counties/cities reserve the right to reject any or all bids." The individual counties exercise their executive responsibilities in determining what items to invite bids on and whether to accept the bids which are submitted.
CONCLUSION
It is the opinion of this office that:
(a) Counties may cooperate with each other to jointly purchase metal culverts, connecting bands and grader blades, which are to be used for the individual needs of such counties;
(b) Counties may solicit bids for their combined purchasing requirements of metal culverts, connecting bands and grader blades and purchase from the lowest and best bidder without individually inviting bids and comparing the bids from the individual invitation to those received from the combined bidding process; and,
(c) A combined competitive bidding procedure which allows the participating counties to decide what to invite bids on in regard to their own individual needs and allows them to accept or reject the bids received does not involve the improper delegation of the counties' executive duties.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Paul R. Otto.
Very truly yours,
WILLIAM L. WEBSTER
Enclosure: Opinion Letter No. 169 (1974)